Filed 7/19/22  Marriage of Heyman CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re the Marriage of MELISSA and MATTHEW HEYMAN. | B309925 |
| _____ | Los Angeles County |
| MELISSA BROOKE HEYMAN, | Super. Ct. No. BD620152 |
| Appellant, | |
| v. | |
| MATTHEW DAVID HEYMAN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph M. Lipner, Judge.  Reversed.

The Law Firm of Fox and Fox and Frank O. Fox for Appellant.

Brot Gross Fishbein and Mark Gross for Respondent.

_____

Matthew David Heyman is the father. The trial court granted the father's request to reduce his child support payments. The mother, Melissa Brooke Heyman, correctly identifies this as error under *In re Marriage of Usher* (2016) 6 Cal.App.5th 347 (*Usher*). The reduction in the father's income did not materially affect his ability to provide for his child and did not merit a reduction of his child support obligation.

The law requires a showing of changed circumstances before a court can consider *how much* to change child support payments. Because the father's case founders on this initial barrier, we do not reach the secondary issue of whether adopting the guideline child support amount was appropriate. (See, e.g., *In re Marriage of Cohen* (2016) 3 Cal.App.5th 1014, 1023 ["We dare say no family lawyer is unaware of the rule requiring a change of circumstances before a support order may be modified."].)

The mother and the father married in 2010 and had a daughter in 2013. The marriage ended in March 2016 with a stipulated divorce judgment. The father agreed to pay monthly child support of $5,000 and various "add-on" expenses for his child, including private school tuition and reasonable extracurricular activities. He also agreed to pay monthly spousal support of $8,333 for five years.

The father's counsel told the trial court the agreed child support was above the then-guideline amount.

The father's income and expense declaration from February 2016—less than a month before the judgment—shows the father had a degree of wealth: about $8.8 million in assets, including about $2.2 million in cash and various deposit accounts and about

$6.5 million in stocks, bonds, "and other assets I could easily sell."

The father is in the movie theater business. He sold a business in 2002 and thereafter worked as a cinema consultant.

In August 2019, the father sought to reduce the sums he paid in child support. The father asserted his income had gone down substantially due to "a downsizing and consolidation of the film buying jobs" in Los Angeles. He learned the mother got a job as an occupational therapist and therefore had an income. (The mother's most recent earnings figure was $6,513 per month.) The father also maintained he was spending more time with his daughter.

The trial court ruled on the father's request in October 2020. In the interim, several of the father's filings noted his income had decreased further due to the COVID-19 pandemic.

The facts before the trial court were largely undisputed. The father claimed his self-employment income had dropped 94 percent since the 2016 judgment, and his total monthly income had dropped from $45,622 to $21,452.

The mother argued the father's financial situation effectively had changed very little because the father's monthly expenses also had dropped drastically: he no longer had to pay spousal support, private school tuition, and child support for his child from another relationship. According to the mother, the father was using voluntary payments, including charitable and retirement contributions, to inflate his expenses. And the father's February 2016 declaration shows his monthly income was $35,940—not the higher amount recited by the judgment— so, she argued, the income differential the father presented was amiss. The mother maintained *Usher* required the trial court to

3

look beyond the change in the father's monthly income to discern whether he had an ongoing ability to pay the stipulated amount.

The trial court acknowledged much of this but found the reduction in the father's monthly income constituted a material change in circumstances. (See *Usher*, *supra*, 6 Cal.App.5th at p. 357 [modifying child support requires a material change of circumstances].) The court identified several differences between this case and *Usher* and found it significant that, unlike the situation in *Usher*, the father's assets were not sitting idle or sheltered and instead were generating a respectable rate of return to support himself and his child. The court reduced the father's child support from the agreed $5,000 per month to $2,036 per month, the guideline child support amount based on the father's reduced income and the mother's new income.

*Usher* requires reversal.

To improve the lives of children, California has a strong policy favoring adequate child support. Courts generally will not modify child support unless there has been a material change of circumstances following an earlier determination. The reason for the change of circumstances rule is to reduce relitigation and to bring finality to financial support determinations. (*Usher*, *supra*, 6 Cal.App.5th at pp. 356–357.)

The parties agreed on the original support payment level. (See *Usher*, *supra*, 6 Cal.App.5th at p. 358 [court must give effect to the parties' intent and reasonable expectations as expressed in the agreement when determining whether a material change of circumstances has occurred].)

The father had a substantial base of resources. His wealth fluctuated between roughly $8.6 and $9.5 million. The father's child support obligation of $5,000 "did not come close to

4

exhausting his [new] monthly income" of $21,452, and the father "had substantial liquid assets from which to pay any necessary expenses not covered by that monthly income." (*Usher*, *supra*, 6 Cal.App.5th at pp. 359–360.) Most of the father's assets are liquid.

The mother has much less, by an order of magnitude. Her net worth was less than $1 million and was mainly in illiquid real and personal property. She was worse off financially in 2020 working as an occupational therapist than she was in 2016, unemployed but getting spousal support. The mother made about $78,000 annually in her job, whereas the father's investment income alone was about $250,000 annually. The disparity in the parents' abilities financially to support their child remained wide: the father is more than 10 times wealthier than the mother.

The mother pointed out reducing child support would put her and the child's housing at risk. The father did not deny this. Nor, on appeal, does he contest the trial court's finding that the father's share of time with his daughter remained the same: 27 percent.

The father's declarations discuss the financial blows to his income in 2019 and 2020. The father never contends, however, that he has had to alter his lifestyle or that he cannot afford to pay the agreed child support. Nor does he claim his daughter's needs have changed.

Under *Usher*, then, the father failed to show a material change in circumstances for purposes of meeting his child support obligation. (See *Usher*, *supra*, 6 Cal.App.5th at p. 350 [reduction in employment income that "did not materially impair" the father's ability to pay agreed child support was not a material

5

change in circumstances]; see also *id.* at p. 361 [trial court abused its discretion in reducing child support without substantial evidence of a material change in father's ability to pay, his standard of living, or the amount needed for the child to maintain a lifestyle commensurate with his own]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 17:41 ["A shift in either parent's financial position is not per se a ground for modification. The court must examine *both* parties' circumstances as a whole; and must also evaluate those circumstances in light of the statutory factors that may properly be considered in fixing child support."].)

The trial court and the father emphasized the father would have to draw on his assets to meet his expenses, including the stipulated child support. This fact is significant but not determinative. (See *Usher, supra,* 6 Cal.App.5th at pp. 359–360 [noting the father "had substantial liquid assets from which to pay any necessary expenses not covered by [his reduced] monthly income"].) According to the father, he had used his assets to pay spousal support that ended in April 2020, which means that cashing out assets was not a change of circumstances.

The father points out that his wealth, at less than $10 million, is small compared to the father's wealth in *Usher,* who had some $67 million. (*Usher, supra,* 6 Cal.App.5th at p. 353.) This case is like *Usher,* however, in that both fathers can continue their existing child support payments without a material change in circumstances.

6

## DISPOSITION

We reverse the October 26, 2020 order and award costs to Melissa Heyman.


WILEY, J.

We concur:


STRATTON, P. J.


GRIMES, J.